J-S10024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.A.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.E.H., | |
| Appellant | No. 1942 EDA 2015 |

Appeal from the Order Entered May 29, 2015
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s): DR-00-00437 PACSES 723102036

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED FEBRUARY 23, 2016**

J.E.H. appeals from the trial court's order entered on May 29, 2015, that overruled his objections filed in response to D.A.C.'s request to have a foreign support order registered and confirmed by the Lehigh County Court of Common Pleas.[1]  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] In overruling J.E.H.'s objections, the trial court's order explained in pertinent part that:

> The Foreign Support order entered on June 20, 2000 is hereby registered and confirmed by the Court of Common Pleas of Lehigh County.  It appearing there is an arrearage in the amount of $173,425.46 which has accumulated since the entry of the order on June 20, 2000, [J.E.H.] is directed to pay a monthly sum of $574 by check or money order to Pennsylvania SCDU, P.O. box 69110, Harrisburg, PA 17106-9110 by the first day of each month.

(Footnote Continued Next Page)

In his brief, J.E.H. lists the following issues for our review:

A. WHERE APPELLEE FIRST FILED FOR SUPPORT IN PENNSYLVANIA, APPELLANT WAS NEVER SERVED WITH NOTICE OF CHILD SUPPORT PROCEEDINGS IN WISCONSIN AND HE OTHERWISE LACKED EVEN MINIMUM CONTACTS WITH THE STATE OF WISCONSIN, DID THE TRIAL COURT COMMIT REVERSABLE [*sic*] ERROR BY FAILING TO SUSTAIN THE APPELLANT'S OBJECTIONS TO REGISTRATION OF THE WISCONSIN CHILD SUPPORT AWARD FOR WANT OF JURISDICTION?

B. WHERE THE APPELLEE GAVE PATENTLY FALSE TESTIMONY TO THE WISCONSIN COURT REGARDING THE PENDENCY OF CHILD SUPPORT PROCEEDINGS IN PENNSYLVANIA AND PATERNITY, DID THE TRIAL COURT COMMIT REVERSABLE [*sic*] ERROR BY FAILING TO SUSTAIN THE APPELLANT'S OBJECTIONS TO REGISTRATION OF THE WISCONSIN CHILD SUPPORT AWARD ON THE BASIS THAT THE ORDER WAS OBTAINED BY FRAUD?

C. WHERE THE WISCONSIN COURT FAILED TO PROVIDE ANY MEANS FOR THE INCARCERATED APPELLANT TO PARTICIPATE IN PROCEEDINGS IN WISCONSIN, DID THE TRIAL COURT COMMIT REVERSABLE [*sic*] ERROR BY FAILING TO SUSTAIN THE APPELLANT'S OBJECTIONS TO REGISTRATION OF THE WISCONSIN CHILD SUPPORT AWARD FOR VIOLATION OF THE APPELLANT'S DUE PROCESS RIGHTS?

D. WHERE EVEN THE APPELLEE ACKNOWLEDGED APPELLANT'S LACK OF PATERNITY IN WISCONSIN FILINGS, DID THE TRIAL COURT COMMIT REVERSABLE [*sic*] ERROR BY FAILING TO SUSTAIN APPELLANT'S OBJECTIONS TO REGISTRATION OF THE WISCONSIN CHILD SUPPORT AWARD ON THE BASIS THAT THE APPELLANT HAD A VALID DEFENSE TO AN AWARD OF CHILD SUPPORT?

J.E.H.'s brief at 7.

_____
*(Footnote Continued)* _____

Order, 5/26/15.

When addressing the type of issues presented by J.E.H., we are guided by the following: "In reviewing a decision concerning the registration of a foreign support order, our standard of review is whether the trial court manifestly abused its discretion or committed an error of law." *Simpson v. Sinclair*, 788 A.2d 1016, 1017 (Pa. Super. 2001) (citing *Stewart v. Stewart*, 743 A.2d 955, 956 (Pa. Super. 1999)).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Douglas G. Reichley of the Court of Common Pleas of Lehigh County, dated July 17, 2015. We conclude that Judge Reichley's well-reasoned opinion properly disposes of the issues that have been raised by J.E.H. Accordingly, we adopt Judge Reichley's opinion as our own and affirm the order on appeal on that basis.

Order affirmed.

President Judge Gantman joins this memorandum.

Judge Platt concurs in the result of this memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2016

- 3 -

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION

*D.A.C.*

████████████,            )
                         )
            Appellee     )
                         )
      VS.                )        DR-00-00437
                         )        PACSES No. 723102036
*J.E.H.*                 )        1942 EDA 2015
████████████,            )
                         )
            Appellant    )

July 20, 2015

Douglas G. Reichley, J.

### 1925(a) Opinion

*J.E.H.*

████████ Appellant, is appealing the Court's order entered May 26, 2015 overruling

his Objections to Enforcement of a Foreign Child Support Order and imposing a monthly

payment to make up for an arrearage Appellant accumulated since the entry of the subject order

on June 20, 2000. For the reasons set forth herein, the Court's order was proper and the Court

respectfully recommends that its order of May 26, 2015 be affirmed.

### Factual and Procedural History

The parties met in 1996 while Appellant was incarcerated in a correctional facility in

*D.A.C.*

Phoenix, Arizona. ████████████, Appellee, was employed as a counselor at the facility.

The parties married in 1997, but did not live together until they moved to reside in Lehigh

County, Pennsylvania in May of 1999. The parties had a child, A.H., born on August ██, 1997.

On September 17, 1999, Appellee moved with the child from the marital residence in

Pennsylvania to Wisconsin. Appellant filed for divorce in Lehigh County on September 24,

1999. Based upon statements made by Appellee's counsel in a court proceeding in Dane County,

Wisconsin on June 20, 2000, Appellee acknowledged she was served with the divorce complaint

1

by certified mail (Exhibit J-4, p. 4), which is an appropriate method of service of process under the Pennsylvania Rules of Civil Procedure in Pennsylvania.[1] Appellee did not have local counsel enter an appearance on her behalf specifically in the Pennsylvania divorce action, nor did she file any responsive pleading in the divorce action. (Exhibit J-4, p.12.)

According to Exhibit 6 attached to Exhibit J-7, Appellee prepared a complaint in support in Lehigh County dated December 15, 1999. This support complaint was docketed February 23, 2000. In that support litigation, William P. Bried, Esq. entered his appearance on Appellee's behalf on February 28, 2000. (Exhibit J-7, Exhibit 2.) An initial support conference was scheduled for May 22, 2000, but this was rescheduled until August 29, 2000. On June 21, 2000, Appellee withdrew the Lehigh County support action without prejudice and the August 29, 2000 support conference was cancelled. (Exhibit J-7, Exhibits 2 and 7.)

Separately, Appellee filed an action in legal separation in Dane County, Wisconsin on October 25, 1999.[2] According to Exhibit J-2, a process server prepared a statement without notarization that the Appellant's mother was served with the Wisconsin divorce action on November 2, 1999. Within the text of the unsworn statement by the process server, he relates the Appellant's mother indicated "she would give all legal documents served on her to her son, ⟪J.E.H.⟫ ▇▇▇▇▇. She also stated that he was out of the country." (Exhibit J-2.) The process server's statement goes on to relate he was contacted by an attorney representing Appellant on November 3, 1999. The attorney supposedly stated he had received the documents served upon

---

[1] Pa.R.C.P. 404(2).

[2] Importantly for this Court's consideration of the objections to the enforcement of the registered support order, it is not clear from the record that the "action in legal separation" filed by Appellee included a count or request for child support. This question becomes relevant because the extent to which one support action was filed before another may be determinative of which support action takes precedence over the other.

the Appellant's mother the previous day, that he would be representing the Appellant in the within matter, and that the Appellant was out of the country at the time. (Exhibit J-2.)

On November 23, 1999, a temporary order was entered in Wisconsin in which Appellee was awarded primary custody of the minor child. On June 20, 2000, the Honorable Sarah B. O'Brien, Circuit Court judge of Dane County, held a hearing at which Appellee was present and represented by counsel. Appellant was not present, and Appellee and her counsel asserted Appellant was incarcerated in Lehigh County on federal drug charges. (Exhibit J-4, p. 3.) The unsworn statement from the process server referred to above was offered as proof that the notice of the Wisconsin divorce action was served on the Appellant's mother. (Exhibit J-4, p. 5.)

Appellee's counsel indicated to Judge O'Brien that in addition to utilizing the process server, Appellant was served with notice "via registered mail which is an accepted form of service in Pennsylvania and that complies with our service statute which says that you can serve the defendant. [Wisconsin Rule of Civil Procedure] 801.11." (Exhibit J-4, p. 5.) Under questioning from Judge O'Brien, counsel for Appellee admitted the process server left the legal papers with Appellant's mother at the Appellant's last known address at 608 Mine Road, Quakertown, Pennsylvania because "that was the only permanent address we had for him." (Exhibit J-4, p. 6.)

Upon further inquiry by Judge O'Brien, Appellee's counsel acknowledged Appellant was not served at the Lehigh County Prison in November 1999, and that there had not been any subsequent attempt to serve the Appellant at the Lehigh County Prison with the notice for the June 20, 2000 hearing. Specifically, Judge O'Brien asked, "And when we sent this notice on May 3, was he in prison?" Both the Appellee and her counsel conceded the Appellant was not in

3

custody until May 19, 2000 so that he would not have been served with notice of the June 20, 2000 proceeding while he was incarcerated. (Exhibit J-4, p. 60.)

There was not any further proof that notice of the June 20, 2000 hearing was provided to Appellant, nor that Appellant was provided notice of how he might request to participate in the Wisconsin hearing if he was incarcerated in another state. Despite this absence of proof of service of notice of the hearing upon Appellant, Judge O'Brien proceeded with the hearing.

Following that hearing, which gave rise to the support order at issue before the Court at this time, the Appellee withdrew her support action in Lehigh County on June 21, 2000. The August 29, 2000 support conference was cancelled.

On July 18, 2000, Judge O'Brien filed her written opinion. Within her Findings of Fact and Conclusions of Law, the court stated Appellee's counsel sent a Summons and Petition via certified mail to Appellant. A return receipt requested bearing the Appellant's signature was received by Appellee's counsel and was offered as proof Appellant signed for the papers on November 18, 1999. (Exhibit J-6, p. 5.) However, this signed return receipt appeared to be proof of service of the original legal separation action in Wisconsin, not a notice of the June 20, 2000 hearing.

This matter came before the Court on October 8, 2014 when a Notice of Registration of the Wisconsin support order was docketed with the Lehigh County Domestic Relations Section. The objections were timely filed thereafter.

On January 21, 2015, the Court heard oral argument during which concerns were raised by the Court that there was not any evidence Appellant had been placed on notice of the June 20, 2000 hearing in Wisconsin, nor had he been notified of the scope of the hearing. Appellee's counsel represented to Judge O'Brien that she had spoken with the Appellant's counsel for the

4

divorce matter filed in Pennsylvania, and referred to a letter dated May 15, 2000 as proof Appellant's counsel was placed on notice of the June 20, 2000 hearing. However, the letter did not make reference to a hearing scheduled for June 20, 2000, nor did it indicate that the issue of child support would be raised during the same hearing.

The Court took the matter under advisement and filed a Memorandum Opinion on March 16, 2015. In that Opinion, the Court explained that because where was no certainty or indication that Appellant received proper notice of the June 20, 2000 hearing in Wisconsin, registration and enforcement of the support order was stayed pursuant to 23 Pa.C.S.A. § 7607(b). Upon review of the circumstances surrounding the service of notice upon Appellant for the June 20, 2000 hearing, this Court felt uncertain that Appellant's due process rights to be made aware of the hearing. The Court scheduled a second hearing to receive any evidence regarding whether Appellant's receipt of notice was proper under applicable law. As noted in this March 16, 2015 Opinion, the record from the Wisconsin proceeding reveals that neither Appellee nor her counsel informed the Wisconsin judge the Appellee had already filed a support action in Lehigh County which was still pending at the time of the June 20, 2000 hearing in Dane County.

At the hearing on May 13, 2015, both counsel offered a collection of four letters from 2000 as Exhibit J-9. The first page of the exhibit is a letter from Appellant's counsel Christine L. Taylor, Esq. to Judge O'Brien dated June 23, 2000 in which Attorney Taylor confirms she spoke to Appellant's counsel in Pennsylvania, William Bried, Esq., after the hearing before Judge O'Brien on June 23, 2000. As stated by Attorney Taylor:

> Unbeknownst to either myself or ⬛⬛⬛⬛⬛, Attorney Bried did file a Notice of Retainer in the Pennsylvania action. I believe that I represented on the record this had not occurred. I apologize for this mistake, but do not believe that it affects the Court's decision in this case, as ⬛⬛⬛⬛ Pennsylvania counsel indicated that he did not intend to pursue that action. Indeed, no court action, besides the initial filing, [has] been pursued in that case.

5

(Exhibit J-9, p. 1)

The next letter is from Attorney W. Hamlin Neely to Judge O'Brien dated June 28, 2000, in which Attorney Neely identified himself as Appellant's lawyer. Attorney Neely explained in the letter that Appellant had been arrested and committed to Lehigh County Prison on May 19, 2000 and was detained without bail. "He was thus unavailable to attend the conference before your Court on June 20, 2000 and was unavailable to attend the conference for child support to be held in Allentown, Lehigh County, Pennsylvania on May 22, 2000. (Exhibit J-9, pp. 3-4)

Attorney Neely went on to assert that Appellant was still pursuing the divorce action in Pennsylvania. In addition, Attorney Neely stated, "██████████ unavailability to appear before the Dane County Court in Wisconsin on June 20, 2000, was fully known to counsel for ████ ███████in Wisconsin." (Exhibit J-6, p. 4.) In light of the fact Appellant did not appear and did not have the ability to appear before Judge O'Brien, and that, "████████ has not been afforded an appropriate opportunity to be heard," Attorney Neely asked Judge O'Brien to withhold taking any immediate action on the requests to enter a divorce decree or to enter an order requiring the payment of child support. (*Id.*)

The next letter in Exhibit J-9 is from July 6, 2000 and is addressed to Judge O'Brien from Attorney Taylor. Within this correspondence, Attorney Taylor argues the Wisconsin court should deny Attorney Neely's request to withhold entering any judgment on the divorce or child support petitions on the grounds that both Appellant and Attorney Neely knew about the June 20, 2000 hearing since she and Attorney Neely spoke on April 20, 2000. Because neither Appellant nor Attorney Neely appeared or attempted to notify Judge O'Brien of the unavailability of Appellant to appear for the hearing, Attorney Taylor argued the Wisconsin court should not grant Attorney Neely's request for the court to withhold entering an order.

6

Finally, Attorney Neely responded on July 14, 2000 in a letter to Judge O'Brien to inform her that Appellant would not be able to afford to engage Wisconsin counsel because of his incarceration. Neely underscored the importance for Judge O'Brien to recall Appellant was incarcerated as of May 19, 2000.

The upshot of this correspondence is that Appellant was in fact on notice of the June 20, 2000 hearing. By failing to appear or at least ask for a postponement, Appellant defaulted on his ability to contest the entry of Judge O'Brien's order requiring him to pay child support. Appellant failed to file an appeal after Judge O'Brien entered her order, and did not file a motion to ask her to reconsider the support order until 2009 when he filed a Notice of Motion and Motion for Relief from Default Judgment on July 27, 2009. Said Motion was denied on August 23, 2010.

Because a record has now been presented before this Court that Appellant had notice of the June 20, 2000 hearing before Judge O'Brien, that he failed to appear or ask for a continuance, and then failed to file an appeal or a motion for reconsideration until 2009, the Court finds Appellant's procedural due process rights were protected and that he defaulted on exercising those rights in a timely manner.

## Discussion

In his Concise Statement pursuant to Pa.R.A.P. 1925(b), Appellant raises six interrelated issues. These issues are appropriately summarized as follows:

1. Whether the Court erred by finding Appellant waived the defenses available to him pursuant to 23 Pa.C.S.A. § 7607,

2. Whether the Court erred by overruling Appellant's objection that Wisconsin had personal jurisdiction over him at the time the support order was entered,

7

3. Whether the Court erred by overruling Appellant's allegation that the Wisconsin support order was obtained by fraud, violated his due process, and that there was a lack of paternity.

"In reviewing a decision concerning the registration of a foreign support order, [the Superior Court's] standard of review is whether the trial court manifestly abused its discretion or committed an error of law." *Casiano v. Casiano*, 815 A.2d 638, 641 (Pa. Super. 2002) (quoting *Simpson v. Sinclair*, 788 A.2d 1016, 1017 (Pa. Super. 2001), *appeal denied*, 806 A.2d 862 (Pa. 2002)).

To enforce a support order entered by the court of another state, the support order must be registered in Pennsylvania. 23 Pa.C.S.A. § 7601. State statutory law provides the requisite procedural guidelines a party must follow in order to properly register a foreign jurisdiction's support order. *Id.* § 7602.

Under Pennsylvania law, a party contesting the validity or enforcement of a registered order or who seeks to vacate the registration of a support order from another state has the burden of proving any of seven different defenses, including, *inter alia*:

1) the issuing tribunal lacked personal jurisdiction over the contesting party;

2) that the order was obtained by fraud; . . . or

5) there is a defense under the law of this State to the remedy sought.

23 Pa.C.S.A. §§ 7607(a)(1), (2), (5); *Simpson*, 788 A.2d at *1019*.

Appellant's first issue on appeal is that the Court erred by finding that Appellant waived these statutory defenses. His second issue is that the Court failed to consider the merits of Appellant's statutory defenses, and the subsequent issues expound on the specific statutory defenses. Each of these issues is addressed in turn.

8

*Service of Process, Personal Jurisdiction, and Due Process Considerations*

The Commonwealth Court has explained the implications of service of process and its

interplay with personal jurisdiction as follows:

> Service of process is the mechanism by which a court obtains jurisdiction over a defendant. The rules relating to service of process must be strictly followed. Proper service is not presumed; rather, the return of service itself must demonstrate that the service was made in conformity with the Pennsylvania Rules of Civil Procedure. In the absence of valid service, a court lacks personal jurisdiction over the party and is powerless to enter judgment against that party. Where service of process is defective, the remedy is to set aside the service. In such a case, the action remains open, however, and the court must allow the plaintiff to attempt to make proper service of process on the defendant which would properly vest jurisdiction in the court.

*City of Philadelphia v. Berman*, 863 A.2d 156, 160 (Pa. Cmwlth. 2004) (internal citations and footnote omitted).

Because the operative service of process occurred in the context of the 1999-2000

timeframe in the Wisconsin courts, it is necessary to review Wisconsin's procedural

requirements for service. Under Wisconsin law regarding service of a natural person:

> (b) If with reasonable diligence the defendant cannot be served under par. (a), then by leaving a copy of the summons at the defendant's usual place of abode:
>
>> 1. In the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof; [or]
>>
>> * * *
>>
>> 2. Pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made.

Wis. Stat. Ann. § 801.11 (West).

Appellant was served in Pennsylvania, which places this case legally under the

requirements of section (b)(2) above. In Pennsylvania, service may be made, *inter alia*, by

handing a copy "at the residence of the defendant to an adult member of the family with whom

he resides." Pa.R.C.P. 402(a)(2)(i). The parties presented as a joint exhibit the Return of Service form filed in the Circuit Court of Dane County, Wisconsin, signed by Patrick Ilario and filed December 8, 1999 representing that Appellant's mother was served at 608 Mine Road in Quakertown, Pennsylvania. (Exhibit J-2.) Appellant's mother accepted service for her son in his absence that day. (*Id.*) Further, counsel for Appellee indicated to Judge O'Brien that Appellant was served by registered mail pursuant to Pa.R.C.P. 403 in addition to personal service of Appellant's mother. (Exhibit J-4, at 5.)

As discussed in the factual findings above, in the July 9, 2000 letter to Judge O'Brien, Attorney Taylor set forth a timeline of events leading up to the June 20, 2000 hearing. She wrote in that letter:

> [Attorney Neely] called my office on April 24, 2000 to inquire about J.E.H.'s ▓▓▓▓▓▓ need to appear at the conference and the scope of the hearing. Attached please find the e-mail correspondence from my assistant documenting Attorney Neely's call and a copy of my letter dated May 15, 2000 in response, a full five weeks before the scheduling conference. As my letter to Attorney Neely indicates, I specifically indicated that I could not advise him as to the consequences of his client's failure to appear at the June 20, 2000 hearing or the repercussions of having a default judgment entered against him.

(Exhibit J-9, at 5.)

In the follow-up correspondence from Attorney Neely, he wrote to Judge O'Brien, "With respect to the correspondence of July 6, 2000, which Attorney Christine Taylor addressed to the Court with a copy to the undersigned, you should be advised that I have no quarrel whatsoever with the chronology which Attorney Taylor sets forth in that letter." (*Id.* at 6.) The response went on to point out that Appellant was incarcerated on May 19, 2000 and was being held without bail, thereby rendering him unable to appear. However, the transcript of the June 20, 2000 hearing illustrates that Appellee and her counsel fairly and accurately represented to Judge O'Brien that Appellant was incarcerated on *May 6, 2000.*

10

This letter concedes the chronology represented above. Consequently, it also functions as a concession that Appellant had notice of the June 20, 2000 hearing. Recognizing that service was properly effected pursuant to applicable rules and that Appellant's counsel at the time represented actual knowledge of the hearing on June 20, 2000, the Court properly concluded that Appellee properly complied with the procedural safeguards to ensure due process was satisfied. Appellant, by and through his counsel Attorney Neely, did not undertake to continue the hearing in Wisconsin or communicate any difficulties to Judge O'Brien in advance of the hearing. The hearing transcript demonstrates that Appellant's status as an inmate in Lehigh County was communicated to the judge at the time of the hearing. (Exhibit J-4, at 5-9.)

It is also noteworthy that Appellant failed to take the necessary steps in 2000 following the entry of the subject order by Judge O'Brien. Under Wisconsin law, an order setting a child support amount is a final order for purposes of taking an appeal. *Campbell v. Campbell*, 659 N.W.2d 106 (Wis. 2002). Wisconsin statutory law provides the time period during which an appeal may be taken:

> **(1) Initiating an appeal.** An appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in s. 806.06(5), or within 90 days of entry if notice is not given, except as provided in this section or otherwise expressly provided by law

Wis. Stat. Ann. § 808.04 (West).

Additionally, and perhaps most significantly, failure to appeal within the times set by Wisconsin statutory law deprives its appellate court of jurisdiction. *Wainwright v. Wainwright*, 500 N.W.2d 343, 345 (Wis. Ct. App. 1993) (citing *Dobberfuhl v. Madison White Trucks, Inc.*, 347 N.W.2d 904, 905 (Wis. Ct. App. 1984)).

11

In this case, Appellant was aware that the June 20, 2000 hearing was scheduled to occur. Correspondence between counsel and Judge O'Brien also advanced concerns about Appellant's incarceration. A written order was entered on July 18, 2000 by Judge O'Brien who concluded that service was properly effectuated and that Wisconsin had personal jurisdiction over Appellant based on his substantial contacts with the state. (Exhibit J-6, at 4-5.) Appellant's legal challenges to the order were available to him at that time through the filing of an appeal and pursuit of other post-judgment avenues. Appellant did not pursue timely relief.

Based on all of the foregoing, the Court properly concluded that Appellant's due process rights were protected and, by extension, Wisconsin achieved personal jurisdiction over Appellant. Appellant neither appeared in person nor sought to continue the hearing based on his incarceration in the month of time his counsel conceded knowing about the hearing between April 24, 2000 and June 20, 2000. Consequently, Appellant failed to meet his burden under 23 Pa.C.S.A. § 7607(a) and the Court's dismissal of his objections was proper and the confirmation of the support order in Pennsylvania should be affirmed. 23 Pa.C.S.A. § 7607(c) (enforcement order must be issued where contesting party does not establish a defense to the validity or enforcement of the order).

For purposes of the instant appeal, the Court will address the merits of Appellant's remaining issues, namely, that the order in Wisconsin was obtained by fraud and that Appellant had a valid defense for lack of paternity.

### Order Obtained by Fraud

One of the defenses Appellant seeks to address is his belief that the Wisconsin order was obtained by fraud on Appellee's part. The statute offers no express definition of "fraud" in this context. Accordingly, it is appropriate to turn to its peculiar and appropriate meaning. 1

12

Pa.C.S.A. § 1903 ("technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition"). Black's Law Dictionary defines "fraud" as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary (8th Ed. 2004); *see Garner v. Bureau of Prof'l & Occupational Affairs, State Bd. of Optometry*, 97 A.3d 437, 441 (Pa. Cmwlth. 2014) (relying on Black's Law Dictionary for peculiar and appropriate meaning of the legal term "fraud").

During oral argument, Appellant's counsel argued that Appellee and her counsel committed fraud because both of them represented to the Wisconsin court that there was no child support action filed in Pennsylvania. (N.T. 5/13/15, at 29.) The record belies Appellant's argument. First, it was represented to Judge O'Brien on June 20, 2000 that there was an action pending in Pennsylvania at that time. Second, in calculating the amount of money she would award for the support payments, Judge O'Brien relied on the amount Appellant was paying at the time for his other children. (Exhibit J-6, at 8-9.) Whether there was a hearing pending in Pennsylvania or not does not adversely impact upon the validity of the judgment in Wisconsin. A review of the transcript from the Wisconsin hearing does not support Appellant's assertion that the order was achieved through misrepresentation or concealment of a material fact. Furthermore, as discussed at length above, Appellant never undertook to timely challenge the order when it was entered in July of 2000.

*Paternity*

Lastly, Appellant asserts the Court failed to consider his defense that the Wisconsin order is unenforceable by virtue of lack of paternity. According to Appellant, Appellee, while petitioning for a change of name to the minor child in Wisconsin, claimed Appellant is not the

13

child's biological father and she wanted to change the name to accurately reflect the biological father's name. (N.T. 5/13/15 ,at 28-29.)

According to the factual findings of Judge O'Brien, the parties were married January 18, 1997 and the minor child A.H. was born to the parties on August 27, 1997, which was during the marriage. In Pennsylvania, the law on paternity is longstanding:

> [A] child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception.

*Brinkley v. King*, 701 A.2d 176, 179 (Pa. 1997).

While this legal presumption has been modified over time, paternity by estoppel is a viable and applicable concept in this case. Paternity by estoppel is a legal mechanism by which a putative father is estopped from denying paternity as a means to evade parental responsibilities. *See K.E.M. v. P.C.S.*, 38 A.3d 798, 808-09 (Pa. 2012). The Pennsylvania Supreme Court recently held that "the determination of paternity by estoppel should be . . . informed according to the actual best interests of the child." *Id.* at 809. Furthermore, a court should not "dismiss a support claim against a purported biological father based on an estoppel theory vesting legal parenthood in another man without the latter being brought before the court at least as a witness." *Id.*

In this case, even if the Court reached the merits of Appellant's paternity defense, it would have failed. The child was born to the parties while they were married and residing together. In Exhibit J-7, Appellant's Motion for Relief from Judgment filed July 27, 2009 in Wisconsin, Appellant alleges Appellee filed a petition in Wisconsin on January 3, 2008 seeking to change the child's name. The petition averred, according to Appellant, that "legal father has abandoned Petitioner (child) and biological father is raising Petitioner." (Exhibit J-7, at 10.)

14

Appellant's motion went on to assert that Appellee withdrew the name change petition and alleges Appellee had no further contact with the man she purported to be the child's biological father.

Accepting these facts as true, the Court finds this argument unavailing. Appellant identified himself as the minor child's father without issue or exception during the period from her birth until 2009 when he first raised the paternity issue. Appellant's obligations for support were established in the order entered in July of 2000, an order that went unchallenged and unappealed within the requisite time periods established in Wisconsin. Paternity by estoppel would apply in this case based on the fact that Appellant never challenged paternity until 2009 and the child is still, as a matter of law, Appellant's child due to differing paternity never having been established.

## Conclusion

The Court properly determined Appellant was placed on notice of the June 20, 2000 hearing before the Wisconsin court, and that Appellant, either on his own or through counsel, failed to notify the Wisconsin court of his unavailability to attend the hearing because of his incarceration in Pennsylvania or to ask for a postponement of the hearing. Additionally, Appellant failed to timely request reconsideration or undertake an appeal pursuant to the laws of Wisconsin upon entry of the support order.

Consequently, the Court was not in a position to consider the merits of any of Appellant's defenses offered under 23 Pa.C.S.A. § 7607(a). Instead, by failing to take action to protect his own interest at the time or to file a timely appeal or motion for reconsideration, Appellant cannot now avail himself of an allegation he was not afforded procedural due process under a proceeding 15 years ago. Furthermore, as discussed in detail above, even if the Court had

15

evaluated the merits of Appellant's defenses, the Court would have determined that Appellant failed to meet his burden under the statute.

Accordingly, the Court properly confirmed the registration of the support order from Dane County, Wisconsin on June 20, 2000. The instant appeal is without merit and the Court respectfully recommends that its confirmation of the registration of the support order be affirmed.

By the Court:

_____
DOUGLAS G. REICHLEY, J.

16